IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Essie Dixon, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 C 1123 |
| | ) | |
| Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Fatima Salkanovic, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 C 1361 |
| | ) | |
| Experian Information Solutions, Inc; Equifax Information Services, LLC; and TransUnion, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Memorandum Opinion and Order

Essie Dixon and Fatima Salkanovic each incurred debts, which were obtained and reported by Midland Credit Management. Plaintiffs eventually noticed inaccuracies regarding these debts in their credit reports (the nature of those alleged inaccuracies

is immaterial here). Through counsel, each plaintiff sent letters to each of the three defendants, which are consumer reporting agencies, requesting that they investigate the inaccurate information. According to plaintiffs, defendants failed to respond to the disputes and failed to conduct a reinvestigation of the contested information.

That prompted plaintiffs to separately file lawsuits in the Circuit Court of Cook County, claiming that defendants violated provisions of the federal Fair Credit Reporting Act ("FCRA") regarding reinvestigation of disputed information in consumer credit reports and the use of reasonable procedures to ensure accuracy of the information contained in those reports. *See* 15 U.S.C. §§ 1681i(a), 1681e(b). Defendants removed each suit to federal court, invoking federal question jurisdiction. *See* 28 U.S.C. § 1331. Plaintiffs each now seek remand to state court, asserting that the allegations in their complaints are insufficient to confer the Article III standing required for federal subject-matter jurisdiction. Because the complaints and briefing on the remand motions are materially identical, I resolve the motions together. The motions are granted.

As the parties claiming federal jurisdiction, defendants bear the burden of establishing it, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight*

2

*Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). The evidentiary hearing defendants request is denied because at the pleading stage, courts "are limited to the complaint's 'general factual allegations of injury resulting from the defendant's conduct' to evaluate standing." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667 (7th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). For this same reason, I decline to consider the exhibits defendants attach to their responses.

Plaintiffs assert that their complaints lack allegations giving rise to an essential element of Article III standing: "an injury in fact that is concrete." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61). While there is no dispute plaintiffs' claims arise under a federal statute, when it comes to standing "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 426–27. Thus, a "bare procedural violation" of a federal statute is not enough on its own to satisfy Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Defendants' first argument is that plaintiffs must have suffered a concrete injury because their complaints seek

3

$10,001.01 "AD Damnun" (that is, according to the loss or harm) and state that they are pursuing "actual damages." Dixon Compl., No. 24 C 1123, ECF 1-2 at 2, 10; Salkanovic Compl., No. 24 C 1361, ECF 1-2 at 2, 10. But conclusory requests for particular damages shed little light on the concrete harm plaintiffs suffered and are insufficient to bring the suits within this court's jurisdiction. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (per curiam) ("A mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing." (citations omitted)).

Defendants press that other allegations in the complaint show concrete harm. For instance, plaintiffs allege that, because of the inaccuracies in their credit reports, they were "afraid that they would be denied credit, and that if they applied and [were] denied, it would further harm their credit score." Dixon Compl. ¶ 42; Salkanovic Compl. ¶ 58. The Seventh Circuit has repeatedly found similar allegations about purely emotional harms like fear or anxiety insufficient for standing purposes.[1] *See, e.g., Wadsworth*, 12 F.4th at 668 ("As our bevy of recent decisions on FDCPA [Fair Debt Collection Practices Act] standing makes clear,

---

[1] Though not without disagreement. *See, e.g., Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 940-56 (7th Cir. 2022) (Hamilton, J., dissenting) (arguing that emotional harms caused by violations of consumer protection statutes do sometimes confer standing); *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 643-47 (7th Cir. 2023) (Lee, J., dissenting) (same).

anxiety and embarrassment are not injuries in fact. Indeed, we have expressly rejected 'stress' as constituting concrete injury . . . .").[2] Additionally, these allegations amount to fears about the risk of future harm, which the Supreme Court has foreclosed as a basis for concrete injury in anything other than suits for injunctive relief. *See Pierre*, 29 F.4th at 938 ("[A] risk of harm qualifies as a concrete injury only for claims for 'forward-looking, injunctive relief to prevent the harm from occurring.'" (quoting *TransUnion*, 594 U.S. at 435)).

Defendants also point to allegations that the "inaccurate reporting and failure to correct the inaccurate reporting impaired [p]laintiff[s'] ability to improve their financial situation by obtaining new or more favorable credit terms" and that they were "discouraged from applying for new credit." Dixon Compl. ¶¶ 40–41; Salkanovic Compl. ¶¶ 56–57. Construing these allegations to suggest that plaintiffs took, or declined to take, certain actions because of the inaccuracies on their credit reports, they have the makings of adequate standing allegations.[3] *See Pucillo*, 66 F.4th

---

[2] The FDCPA is a distinct consumer protection statute from the FCRA, but the principles regarding standing in the two contexts are largely interchangeable. *See Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 737–38 (7th Cir. 2023) (FDCPA standing case relying extensively on *TransUnion*, a FCRA case).

[3] The allegations could also be construed as encapsulating plaintiffs' fear over seeking new or better credit because of the inaccuracies, in which case they fall short for the reason

5

at 639 (suggesting, in context of debt collection letters sent in violation of FDCPA, "detrimental action that the plaintiff took in reliance on the letters" might confer standing (citation omitted)). But the complaints lack enough surrounding factual detail to render these alleged harms concrete. *See Keller v. LVNV Funding, LLC*, No. 22-cv-00942, 2022 WL 7501335, at *2 (N.D. Ill. Oct. 13, 2022) (concluding alleged harm "*might* be enough to establish Article III standing, but only when accompanied by specific allegations of tangible harm"). For example, the complaints are silent as to how plaintiffs would have sought new or improved credit absent their reports' inaccuracies--including details such as what new credit lines they would have opened or for which existing lines of credit they would have sought improved terms. Nor do the complaints say whether plaintiffs in fact attempted to obtain new or more favorable credit terms and, if so, how the inaccuracies impeded them. Without allegations like those, the alleged harms are too speculative to grant Article III standing.

Nor am I persuaded by defendants' invocation of the "artful pleading doctrine," under which "[a] plaintiff may not frame his action under state law and omit federal questions that are essential to recovery" in order to avoid submitting to federal

---

discussed above: emotional harms like fear are not concrete in this context.

jurisdiction. *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992) (citations omitted). That is not the situation here. Plaintiffs have made no attempt to hide that their case depends entirely on a federal statute. The distinction drawn in cases like *TransUnion* between standing requirements and Congress's creation of federal causes of action--a distinction that often benefits defendants seeking to dismiss federal suits, as in *TransUnion*-- gives plaintiffs leeway to tailor their complaints to avoid federal court by seeking redress for some harms and not others caused by violations of federal statutes. *See Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1248 (7th Cir. 2021) ("It is no secret to anyone that [plaintiffs] took care in their allegations . . . to steer clear of federal court. But in general, plaintiffs may do this."). In any event, if defendants are right and plaintiffs later seek damages for concrete harms, defendants can remove the suits again. *See Collier*, 889 F.3d at 896 ("If, after remand, [plaintiffs] were to amend their complaint to state an injury in fact, 28 U.S.C. § 1446(b)(3) would permit [defendant] to then remove the case to federal court. And even if [plaintiffs] do not amend, [defendant] could remove if they receive any paper that affirmatively and unambiguously reveals that the predicates for removal are present." (citation and internal quotation marks omitted)).

Finally, I reject defendants' request in the alternative that, on remand, I bind plaintiffs to their admission that they

7

have no actual damages. As observed above, should plaintiffs change course on remand and unambiguously pursue damages based on concrete injuries, defendants can return to federal court.

For the foregoing reasons, plaintiffs' motions to remand are granted.

**ENTER ORDER:**

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated: July 18, 2024